## Case No. 4,279.

EDGARTON v. BRECK et al.

[5 Ban. & A. 42.][1]

Circuit Court, D. Massachusetts. Dec., 1879.

Thos. H. Dodge, for complainants.

W. B. H. Dowse and Alexander Selkirk, for defendants.

LOWELL, District Judge. I do not conceive it to be my duty to decide whether the assignments of Whitcomb to White, and of Whitcomb and White through Kniffen to Brown, conveyed, in advance, an interest in the extended term of the patent, or not. The parties interested treated them as conveying only the original term, and when the extension was dealt with, the plaintiff Brown, who is now said by the defendants to be the sole owner for a large part of New England, accepted a deed of one-third of the whole interest from the original patentee, White accepted another third, and. the three conveyed one-fourth part of the whole patent to Dodge. Under these circumstances, the complainant Brown cannot set up that he is the sole owner of the patent for Massachusetts, nor has he asserted such a pretension. The defendants need not be solicitous for Brown's interests. They are safe in any event, since Brown is a plaintiff, and whatever his title may be, his whole damages will be forever disposed of by the decree. Dodge is a proper party plaintiff under any construction of the deeds, because he claims title under Brown. If the other complainants, Whitcomb and White, had no scintilla of interest, the remedy would not be a dismissal of the bill, but merely of their names as parties to it. But, since these persons insist that they have a title, and the records of the patent office show it, they are necessary parties, either as plaintiffs or defendants; and if they had not been joined, the present defendants might well have objected; and, since Brown and Dodge admit their title, they are proper plaintiffs; if there had been a dispute between them on this point, they should have been made defendants. The bill, then, is not objectionable in respect to the parties plaintiff.

In Brown v. Whittemore [Case No. 2,033], the second and fourth claims of this reissued patent were sustained by this court. In the present case, a large number of patents have been referred to, some of which were not before us at the former trial. The most important of these, that granted to Nathan Martz, was set up in the answer in Brown v. Whittemore, but how much it was relied upon in argument I do not recollect. My impression is that Whitcomb was proved to have preceded Martz as an inventor in all respects, and the only real question was whether plaintiff had not used or sold his invention for a longer time than the law permits. Whitcomb has died, and there is no proof in this case that his invention was earlier than his application; so that we must compare the two patents, assuming Martz to be the first inventor of what he describes. The record makes it evident that there were many inventors in this class of machines, and that the various parts of a horse-rake, such as the wheels, thills, rakehead and teeth, with levers to raise and lower the teeth, had been combined in many ways. The plaintiffs' rake appeared to us in the former case, and still appears to me, to be a decided improvement upon the older. forms. It had greater capacity and a more useful operation, depending upon the mode in which the rakehead was hinged, and that in which it was raised and lowered, and the relative position of teeth to the line of the wheels. Martz's drawings undoubtedly show a rake resembling Whitcomb's; but its organization is such that it was not capable of doing such a variety of work, if indeed it would work at all. Its mode of holding the teeth down to the work was by coiled springs, which must have interfered seriously with the full oscillation of the rakehead, and which could not possibly be adapted, in the

same rake, to do work upon different qualities of hay and grain; if the springs were strong enough for one sort of work, they would be too strong or too weak for other sorts. It is plain, therefore, that Martz does not anticipate all the claims of the reissued patent. It is admitted by the plaintiffs that the first and third claims, which are for the combination and arrangement of the rakehead and axle, and of rakehead, shafts, hinges and axle, must be narrowly construed in order to be valid, and are not infringed.

The second claim is for "the combination and relative arrangement of the hinged rakehead with the supporting axle and carrying wheels, substantially as shown and described, whereby the head is supported above the rear upper edge of the axle, as shown, and the lower ends of the teeth, when gathering the hay, occupy positions in rear of the head of the wheels, and forward of a vertical plane on a line with the rear edge of the wheels, substantially as shown in the accompanying drawings." The defendants attach the upper ends of their tines or teeth to a rod, stretched parallel with and behind the axle; the rod turns in sockets and carries the teeth upward when the load is dumped; the teeth are attached firmly to the rod only at their ends, and have a little vertical play which enables them to avoid slight inequalities in the ground or other obstructions; at some distance behind and a little above this rod, and firmly attached to it in two or three places, is a bar with staples on its under side, through which the teeth are passed, and which are large enough not to interfere with the play of the teeth above mentioned. One of the disputed questions is whether this rod and bar together make a rakehead. The defendants show that constructions like this were known, before Whitcomb's patent was issued, one of which is found in the Randall Pratt patent; and there is evidence that the parts are called in the trade a thimble rod and a staple bar respectively; and that a bar with the teeth firmly attached or coiled round it, so that they must move in all directions with it, is called a rakehead. Whether such a discrimination was made at the date of Whitcomb's patent, I do not know; nor is it important, because he was describing a certain thing which is plainly shown in his description and drawings, and the name he gives it is of no consequence. It seems to me that the rod and bar of the defendants' rake together perform the functions of the plaintiffs' rakehead. Martz's device, which the defendants admit to be a rakehead, was divided into two bars attached to each other, and working together to hold, raise and lower the teeth. It is an old form of rakehead which the defendants have substituted for that of the claim. If better in some respects, still it was a known substitute.

The difficulty with the second claim of the reissue, as applied to this case, is that the patentee has seen fit, for some reason, to de-scribe his rakehead as "supported above the upper edge of the axle," and the defendants' rakehead is on a line with the axle. It may be that this limitation was unnecessary; but it is found in the second claim, and I do not feel at liberty to disregard it. The defendants' machine, therefore, is not within this claim.

The fourth and fifth claims appear to me to be infringed. The defendants use the hand and foot levers and their connections for holding the teeth down and for raising them, though in a somewhat different form. They have added an ingenious piece of mechanism, by which the levers are connected with the whiffle-tree, and by this means the horse in walking draws up the teeth when the load is to be discharged; but I understand the witnesses on both sides to say that this additional mechanism cannot be relied on to do all that is necessary at all times, but must often, if not usually, be helped out at some point by the action of the foot or hand, or both. It does not enable the defendants to dispense, wholly, with any part of the plaintiffs' combinations; and I understand from the record that they do, in fact, use them to a certain extent.

Decree for an account.